## WILLIS, *Executrix*, v. BARRON, *Appellant*.

### Division Two, March 29, 1898.

1. **Partnership**: PLEADING: PARTIES: EQUITY. The common law rule preventing one partner from suing the partnership, has been so modified by the statute making all contracts joint and several, that a partner, to whom was executed a note by the partnership, may in his individual name sue the other partner to compel him to pay his share of such note; and a recovery in such case can be had in an action at law.

2. ———: CONTRACT. A note signed by a firm payable to one partner is the several contract of each partner; and one partner can not legally dispute the validity of such contract, as the partners are adversary parties, capable of contracting each with the others, and of binding each other.

3. ———: ———: LOAN TO FIRM BY PARTNER. A loan of money to the firm by one partner is as to him an individual and not a firm transaction, to be settled upon an accounting in equity, or in the probate court under the statute if one partner dies.

4. ———: PLEADING: COUNTERCLAIM: ACCOUNT. An unsettled partnership account can not be pleaded as a counterclaim.

5. ——: ——: ——: ——: CASE STATED. Willis and defend-
ant were partners. The firm executed its note to Willis as payee,
and the executrix of Willis sued the defendant for one half the
note. Defendant pleaded payment and a counterclaim of an unad-
justed partnership account, and prayed the appointment of a referee
and for an accounting. *Held*, that the suit on the note was an action
at law; that it was not changed to one of equity by the defense of
payment or by the plea of an unsettled partnership account. *Held*,
also, that a mere suggestion of an accounting, or of an equitable
defense is not sufficient pleading of an equitable defense, and will
not oust a court of law of its jurisdiction.

*Transferred from Kansas City Court of Appeals.*

AFFIRMED.

*J. H. Cupp* for appellant.

(1)    Under the uniform line of decisions in this
State neither a partner nor his personal representative
is entitled to maintain an action at law against a
copartner for debts or liabilities arising out of the
partnership transactions until there has been a settle-
ment *inter se* and a balance found. *Rankin v. Farley*,
29 Mo. App. 587; *Scott, Adm'r, v. Caruth*, 50 Mo. 120;
*Bond v. Bemis*, 55 Mo. 524; *Smith v. Smith*, 33 Mo.
557; *Feurt v. Brown*, 23 Mo. App. 332; *McKnight v.
McCutcheon*, 27 Mo. 431; Parsons on Part. [2 Ed.],
secs. 288, 289 and 290; Story on Part. [7 Ed.], secs.
234, 235, 236, 237; *Newberger v. Friede*, 23 Mo. 631.
(2)    This record discloses no settlement or accounting
between the partners except the indorsement on the
bottom of the alleged partnership contract. This
indorsement shows that on March 1, 1890, the partners
had reckoned their losses to that date to be $4,000, for
one half of which ($2,000) Barron then executed and
delivered his individual note to Willis to square the
account. But the alleged contract and the indorse-
ment of settlement aforesaid was not a paper which

proved itself, being not under seal or otherwise authenticated. No proof was offered showing its execution. And over the objection of the defendant the court erroneously permitted the plaintiff to read it in evidence to the jury. It should clearly have been rejected. (3) Yet even conceding this instrument as properly in the case, it simply discloses a settlement made between the partners five months before the first of the notes sued on was executed. Besides, the notes sued on do not purport to have been executed pursuant to an accounting or settlement. They are not individual notes of Barron to his copartner, Willis, as in the first instance, but they are firm notes executed to Willis, one of its members. (4) Again, if this pretended contract is to be considered as evidence in this case, it must stand for all it is worth to both parties. Among other things this instrument provides that R. T. Willis is to furnish all the capital for carrying on the firm business; that Barron was only to give his time, labor and skill, and each was to share equally in profits and losses. Now, the evidence of John T. Mitchell shows (and stands unquestioned and uncontradicted) that in 1891 Barron put $1,000 of his individual means into the business. Surely, therefore, upon an equitable accounting of the partnership, Barron should have received credit by this amount, so advanced by him. (5) The court erroneously forced the defendant to try an equity case, involving a complicated, unsettled partnership account by a jury. (6) And then further by instructions to the jury essentially annihilated all the equities set up by the answer and sustained by the proofs in the cause.

*H. S. Boothe* and *W. W. Fry* for respondent.

(1) When a copartnership has been dissolved by the death of one of the partners a settlement of the

partnership must be made under the administration law, and the probate court has sole jurisdiction. *Enswoi th v. Curd*, 68 Mo. 282; *Caldwell v. Hawkins*, 73 Mo. 450; *Church v. Robertson*, 71 Mo. 341; *Morrison v. Murphy*, 36 Mo. App. 50. If there were unsettled partnership differences, having failed to have the same adjusted in the probate court, his claim is barred and plaintiff is entitled to a verdict. (2) It is true that a court possessed of general equity powers is the proper tribunal in which to settle the affairs of a copartnership between the living partners. To such cases are the citations (*Rankins v. Forley*, 29 Mo. App. 587) in appellant's brief applicable but they do not apply here, because this is an action of the executrix of a deceased partner against one partner for one half of a debt due the intestate individually from a partnership. (3) The partnership estate was open in the probate court for more than two years for the adjustment not only of any individual claim appellant might have had against said estate, but for any partnership differences. Having failed to present any claim in two years allowed by statute, he is by the very words of the statute barred. R. S. 1889, sec. 184. The probate court had exclusive jurisdiction and the claim was barred in the probate court and in the circuit court. *Montelius v. Sarpy*, 11 Mo. 237; *Stiles v. Smith*, 55 Mo. 363; *Richardson v. Harrison*, 36 Mo. 96; *Greenabaum v. Elliott*, 60 Mo. 32.

GANTT, P. J.—This is an action by the executrix of R. T. Willis, deceased, to recover one half of the amount of two notes and interest executed by the firm of Willis & Barron, composed of R. T. Willis and P. J. Barron to R. T. Willis in his lifetime. The petition alleges the partnership of Willis & Barron in 1890, the execution of the notes, the death of Willis in 1891, the

qualification of plaintiff as executrix of the estate of R. T. Willis, an administration of the partnership estate of the firm, its insolvency and the final settlement thereof, and the discharge of plaintiff as administratrix thereof, and concluded with a prayer for judgment for one half of the amount of said notes and interest.

Defendant admitted the partnership, the execution of the notes, the appointment of plaintiff as executrix, but averred there had never been an accounting between defendant and R. T. Willis, and charged that Willis had drawn out partnership assets in excess of his share to an amount greater than the notes, and prayed for the appointment of a referee and for an accounting. The reply was a general denial of the answer.

There was a judgment for plaintiff in the circuit court from which defendant appealed to the Kansas City Court of Appeals. That court upon a division of opinion certified the cause to this court. Appellant insists upon two propositions to reverse the judgment. *First*, that an action at law can not be maintained by one partner upon a promissory note executed to him individually by the partnership of which he is a member. *Second*, that the court erroneously excluded evidence tending to show that R. T. Willis in his lifetime drew out of the partnership funds, in excess of his share, more than enough to pay off his share of the notes sued on.

I. At common law partnership contracts were construed to be joint only, not joint and several. As a consequence of this rule in actions by or against partners it was necessary that all the partners should join as plaintiffs or be joined as defendants. A further consequence of this doctrine was that a partner could not sue a firm of which he was a member on a note executed by the firm to himself, and if a person were a

member of two firms, one of said firms could not sue the
other at law, as the names of all the members of the
firm, whether appearing in the firm name or not, must
be set out in the declaration, or petition, and likewise
the names of all the partners of the firm sued must all
be set out, and the result would be a party suing him-
self which the law would not tolerate. 1 Chitty Pl., pp.
*47 and *48; 1 Daniel, Neg. Inst., sec. 354. The remedy
in such cases was in equity. This difficulty of suing at
law ceased, however, when a negotiable instrument
passed to a third party because in such case the in-
dorsee could sue all the makers. Although one part-
ner could not sue his firm, or a firm having a common
partner with another firm, could not sue the other *at
law*, no difficulty was found by the courts of chancery
in enforcing notes given by a firm to one of its mem-
bers, or by one firm, to another firm, having a common
partner, for equity treated the different firms for the
purposes of substantial justice precisely as if composed
of strangers or as if they were corporate companies.
1 Story's Eq. Jur., secs. 679, 680 and 681. All the law
writers and all the adjudged cases place the disability
of one partner to sue his firm upon its note to him upon
the grounds that a man can not contract with himself,
and because it was deemed absurd to permit a party to
be both a plaintiff and defendant in the same action, and
for the further reason that until the partnership affairs
were adjudged and the balance struck it could not be
said one partner was indebted to another. Judge BLISS,
in his Code Pleadings, sec. 91, says: "At common
law where there was a joint obligation or undertaking,
in an action upon it, all who thus join must be made
defendants. . . . . . . . Thus contracts made by part-
ners with third persons are *joint and all must be joined
in an action*."

Recognizing that this rule existed at common law,

and the grounds upon which it was based, we are confronted with our statute, section 2384, Revised Statutes 1889, which provides that "all contracts which by the common law are joint only, shall be construed to be joint and several," and section 2387 which further provides that "in all cases of joint obligations and joint assumptions of copartners or others, suits may be brought and prosecuted against any one or more of those who are so liable." Now the partner holding the firm's note payable absolutely to himself, at common law was under no disability to sue his firm, save only that the note, being a joint promise, he was necessarily compelled to sue himself; but since the statute now makes the note the several contract of each member of the firm, and makes each partner liable *in solido*, the payee is no longer under the necessity of suing himself, and hence so far as the question of parties to pleadings is concerned he can sue either or all of the other partners without infringing the common law rule of pleading. Likewise as the note is the several contract of each partner no legal objection can be raised to the validity of the contract itself, as they are clearly adversary parties capable of contracting each with the other and binding each other. While the payee of such a note could not be both debtor to, and creditor of himself, at common law, it is not true that the payee can not be creditor, and the other members of the partnership, who borrow his money and give him a partnership note therefor, can not be his debtors, each being severally liable thereon for the whole amount of the note. To defeat such a note after a partner has loaned his firm out of his individual assets the amount of money it represents, merely because he is a member of the firm, is to defeat the plain purpose of the parties and the justice of the case, whereas to hold all the partners bound except the payee himself is to effectu-

ate the truth of the transaction and charge the real debtors with their obligation. So far as the loan of the money to the firm by one partner is concerned it is as to him at least an individual, and not a firm transaction, to be settled upon an accounting in equity, or in the probate court under our statute, if one partner dies.

This conclusion does not militate against the well settled doctrine that an action of assumpsit at law can not be maintained by one partner against another for a balance owing on the firm account in the absence of an adjustment of the partnership affairs. *Scott v. Caruth*, 50 Mo. 120; *Bond v. Bemis*, 55 Mo. 524; *Smith v. Smith*, 33 Mo. 557.

To say that one partner could not sue another at law is stating the rule too broadly even at common law. Chief Justice MARSHALL, in *Van Ness v. Forrest*, 8 Cranch, 30, called attention to this error. In that case it was ruled that a promissory note given by one member of a commercial company to another member for the use of the company would support an action at law by the promisee in his own name against the maker, notwithstanding both parties were partners in that company, and the money when recovered would belong to the company, the Chief Justice saying: "The principle that a company can not sue its members does not apply to the case, nor does the principle that a partner can not sue a partner on a partnership transaction apply to any case where a note is given for money, not to a firm, but to an individual member." So in *Mitchell v. Wells*, 54 Mich. 127, one partner sued another on a note, and the defense was that it was connected with partnership transactions and dependent on them, and paid by credits. It was insisted there as here, that the remedy was in equity alone, but the court said, "It is a legal obligation in

form, and therefore may be sued at law according to its terms. . . . There is no case that we are aware of where an obligation legal in form can not be sued at law."

So in *Morrison v. Stockwell's Adm'r*, 9 Dana (Ky.), 172, the action was upon a promissory note payable to James N. Morrison, executed by "Morrison & Stockwell," of which firm Morrison, the plaintiff, was a partner. The Court of Appeals of Kentucky through Chief Justice ROBERTSON, said: ' 'The fact that Morrison (the plaintiff) was both obligee and apparent obligor, should, *per se*, have no other legal effect than that of making the note the single obligation of Stockwell. . . . Morrison's incapacity to make a contract with himself did not affect the capacity of Stockwell to make a binding contract with him on one side and in their joint names on the other side. The only reason why Morrison was not bound as an obligor *did not apply to Stockwell*. There was then a legal obligation and it was of course the single obligation of Stockwell." In *Bonnaffe v. Fenner*, 6 Sm. & M. (Miss.), 212, the Supreme Court of Mississippi said: "It is laid down as a general rule that where one partner has a claim upon his copartner for a sum of money due on account of the partnership, but not constituting the balance of a separate account, or a general balance of all accounts, he can not recover by action at law." But this rule has its exceptions. A prominent exception takes the place of the rule when the sum sought to be recovered is separated from the partnership account. Collyer on Part. 158 and 148. The making of a promissory note by several partners in favor of another is an acknowledgment of a separation of the sum from the partnership account. *Smith v. Lusher*, 5 Cow. 688, and the same court followed this precedent in *Sturges v. Swift*, 32 Miss. 239, and *Anderson v. Robertson*, 32

Miss. 241; *Merrill v. Green*, 55 N. Y. 270; *Walker v. Wait*, 50 Vt. 668; *Scott v. Campbell*, 30 Ala. 728; 2 Lindley on Part. 565.

But the question is settled in this State by the decision of this court in *Faulkner v. Faulkner*, 73 Mo. 327, to which we have not been referred, in which it was unanimously held that the note being the joint and several contract of each maker, the plaintiff could recover *at law* and would not be driven into equity, the court, while admitting the common law rule, saying, "This principle, however, does not apply even at common law except where the contract is *joint*, and *not* where it is (as are all contracts in this State) both joint and several." *Smith v. Gregory*, 75 Mo. 121.

II.   Having disposed of plaintiff's right to sue, it remains only to be seen whether the answer set up an equitable defense requiring the case to be heard by the chancellor.   It will be observed that defendant admits the partnership and the execution of the note. He pleads payment and a counterclaim of an unadjusted partnership account. He does not state any account nor show cause why he can not.   The defense of payment is of course a legal defense and was heard.   Whatever may be the law in other jurisdictions it is the settled law of this court that an unsettled partnership account can not be pleaded as a counterclaim.   *Wright v. Jacobs*, 61 Mo. 19; *Leabo v. Renshaw*, 61 Mo. 292; *Jones v. Shaw*, 67 Mo. 667; *Berthold v. O'Hara*, 121 Mo. 88.

There is moreover no sufficient pleading of any equitable defense.   Upon principle, and the weight of authority we think it is clear that a mere suggestion of an accounting, and an·equitable defense, will not oust a court of law of its jurisdiction, but a party must go further and state some specific ground for invoking the jurisdiction of equity.   This the defendant has not done.   A careful reading of the evidence offered by

defendant convinces us that the judgment was for the right party and there is no merit in the defense, either in the answer, or the facts attempted to be shown.

The judgment of the circuit court is affirmed. SHERWOOD, J., concurs. BURGESS, J., absent.