THE FARMERS' BANK OF SARATOGA Co., Appellant, v. JOSHUA
MAXWELL.

A negotiable promissory note payable absolutely upon its face, and given to a
mutual insurance company, may be negotiated by such company in the usual
and ordinary course of business.

Where the company, by its charter, can issue policies either on the mutual or
cash plan, it may receive, for such policies, promissory notes on time.

Where the company has negotiated such note in the usual course of business,
the title thereto is vested absolutely in the indorsee; and any subsequent
arrangement which the company may make with the maker of such note in
respect to its payment without the assent or knowledge of the indorsee
thereof, will not affect his rights, or the rights of a *bona fide* holder of the
same.

THIS action was brought by the plaintiff, as holder and
owner of a promissory note made by the defendant, as follows:

" $300.              BUFFALO, November 30, 1853.

" One year from date I promise to pay James Noxon, Esq.,
Secretary, or order, three hundred dollars, for value received,
at Attica Bank, Buffalo.

                                    " J. MAXWELL.

" (Indorsed)    JAS. NOXON, Sec'y."

The plaintiff claimed to be the owner and holder of the
note, having discounted the same, and as such by the com-
plaint demanded judgment. The defense was a general denial,
and also that the note was given for the premium for insur-
ance for $5,000 on the steamboat Globe, her tackle, &c.,
which insurance was granted by the Hudson River Fire and
Marine Insurance Company, and that said company, at the
time of granting such insurance, represented that it was a
solvent and responsible company, when, in truth, it was insol-
vent at the time, and that afterwards, and on the 15th April,
1854, and before the note had been transferred to the plaintiff,
the defendant, at the request of the insurance company, sur-
rendered up the policy, and the company agreed to surrender
up to him, as canceled and satisfied, the note in suit. This

was the defense as set up in the answer, and the pleadings were not amended.

The judge who tried the cause with a jury, found, as a matter of fact, that on the day of its date the defendant made the promissory note in consideration of a policy of insurance issued by the insurance company mentioned; that James Noxon was the secretary of the company, and that the note was indorsed by him, and before the expiration of the year was discounted by the plaintiff, and the proceeds placed to the credit of Noxon as secretary; that the plaintiff is a banking incorporation; that the insurance company was organized and incorporated under the act of 1849; that James Noxon kept an account in plaintiff's bank as secretary, and was a director in said bank, and that his brother, Alfred Noxon, was president of said bank, and also vice-president of the insurance company, and that the executive officers of the bank knew, at the time of the discounting said note, that it was a premium note, given to said insurance company as such, and knew that the said insurance company was organized under the act of 1849.

As conclusions of law he found that the note was not transferable by Noxon, secretary, nor by the insurance company, and that the plaintiff was not a *bona fide* holder, and he ordered the complaint dismissed, with costs, and the judgment was affirmed at a General Term in fourth district, and plaintiff appeals to this court.

*William A. Beach*, for the appellant.

I. The proposition that the note in suit is not transferable is founded upon the idea that as it is an insurance premium note, an assessment for losses was a prerequisite to its availability. Should that be conceded, that would not affect the negotiability of the paper. The indorsee would then take subject to that necessity. (*Marine Bank* v. *Vail*, 6 Bosw., 421; *Nelson* v. *Eaton* [Court of Appeals], 6 Abb., 113.)

1. The question of assessment cannot affect the transferability of paper negotiable by its terms.

2. The necessity for an assessment must be derived from

the terms of the note, or from the charter, and the law under which it was obtained. It does not follow from the circumstance that it was a note for an insurance premium. It is not a necessity inherent — natural to the instrument.

This note is payable absolutely and unconditionally; there is nothing, therefore, in the note requiring an assessment preliminary to payment.

3. There is nothing in the charter to that effect.

4. The law under which this company was organized, required no assessment, for it contains no provision on the subject. (See Act of 1849.)

II. This company might receive cash in lieu of a premium note; and where cash may be received in lieu of a premium note, an absolute promise to pay it is likewise receivable. The insured may give, and the company may receive, his check for cash; or a certificate of deposit; or, by parity of reasoning, a negotiable bank note.

III. The circumstance that the note was payable to an officer of the company, does not limit its negotiability. It was negotiable by the indorsement of the payee in his official character.

IV. Hence, it is immaterial whether or not the plaintiff was a *bona fide* holder of this paper. Not being liable to assessment, either because this was a stock company and could collect without it, or because the form of the promise dispensed with that formality, any holder, with or without notice of all the circumstances, could recover. And so, likewise, if the note was given and received as cash, under the special provisions of the charter.

*John H. Reynolds*, for the respondent.

CAMPBELL, J.   The note was given on the day of its date, November 30, 1853, to the insurance company, in consideration of a policy of insurance that day issued. The note is not conditional in its terms, but is payable, absolutely, on a day certain and at a fixed place. It is an ordinary promissory note, and, so far as appears on its face, it may have been given to the company as well for money loaned as for a policy

issued. On the 31st day of December following this note was discounted by the plaintiff for the insurance company, in the usual and ordinary course of business, and the money proceeds of the note placed to the credit of the company, which had a regular account with the plaintiff. I do not think there is any pretense for saying that this note was what is technically called a premium note. It is a note given for a premium, it is true, and this is all that is claimed in the defendant's answer. But it is a note absolute in its terms. The company, by its charter, could issue policies on the system of incorporated cash capital companies, as well as on the mutual plan. Its charter provided for issuing policies upon the cash system. For the money to be thus paid, a promissory note on time could certainly be taken. It could not be what is called an investment of the funds of the company under the 8th section of the law of 1849. The 21st section of the act of 1849 authorized this company to unite a cash capital to any extent, as an additional security, and that section, I think, warranted the provision in the charter of the insurance company to whom this note was given. There certainly is nothing in the general insurance laws of 1849, or any other act, which prevents a mutual insurance company taking a note from one of its members, for the absolute and unqualified payment of the amount of his premium of insurance, if the insured is willing to give it in that way. . This defendant has said by his note, that he was willing to pay and would pay in any event, and without regard to the fact whether or not the company had sustained losses. When the company held such a note I am unable to see why they could not transfer it, and apply the proceeds to the payments of debts or to meet any of the wants or necessities of the company, or to put their funds in better shape for investment. It was but an ordinary negotiable promissory note. On the trial the defendant offered to show that in March, 1854, the secretary of the insurance company agreed with him that the note and policy should be canceled upon the payment of the premium then earned, and which portion of such premium earned was to be applied upon a loss of the defendant which had been

adjusted by the company, and that in pursuance thereof the policy was canceled and the note was to have been returned. This evidence was excluded. The note had been discounted by the plaintiff several months before this alleged settlement took place, and the plaintiff could not be affected by it unless a party to the arrangement.

I am of opinion that the complaint should not have been dismissed, but on the facts proved the plaintiff was entitled to judgment, and that the judgment of the Supreme Court should be reversed, and a new trial ordered, with costs to abide the event.

## SAME *v.* ANSON D. ELLIS.

The judge in this case, in addition to the findings in *Maxwell's Case*, found the note had been paid by the defendant and canceled by the insurance company before the transfer thereof to the plaintiff.

The answer sets up that the insurance company was indebted to the firm of which he was a member, for losses on the 13th of April, 1854, and that the defendant and the company on that day settled and adjusted the note in controversy, and the company agreed to surrender it to defendant. The offer, which was excluded, was to show this settlement in March, 1854. On the trial the defendant read the evidence of James Noxon, the plaintiff's cashier, taken under a stipulation, proving by Noxon's testimony that the note was discounted by the plaintiff on the 31st December, 1853, three months before the alleged settlement.

The note in this case was an ordinary negotiable promissory note, payable at a fixed time and place, and in all respects like the note of Maxwell, and made payable to the order of the secretary, and was given for the premium for insurance on defendant's vessel or propeller.

This judgment should also be reversed.

## THE SAME *v.* SAMUEL L. WATSON.

The facts are substantially the same as in *Ellis' Case*. The draft was drawn and accepted after the note had been discounted by plaintiff.